**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **In Re: 21-30520-AMN** | ) | **Chapter 13 Proceeding** |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| Debtor | ) | |
| | ) | |
| **U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust** | ) | |
| Movant | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| **and Roberta Napolitano, Trustee** | ) | |
| Respondent | ) | **March 16, 2023** |

<u>**MOTION FOR RELIEF FROM AUTOMATIC STAY**</u>
<u>**(REAL PROPERTY)**</u>

U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust

("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic

stay with respect to certain real property of the Debtor(s) having an address of 717 Wheelers

Farm Road, Orange, Connecticut 06477 (the "Property").  In further support of this Motion, Movant respectfully states:

1.  A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor(s) on June 30, 2021.

2.  A Chapter 13 Plan was confirmed on July 22, 2022.

3.  The Debtor(s) have executed and delivered or are otherwise obligated with respect to that certain Home Equity Line of Credit Agreement with a Credit Limit of $180,000.00 (the "Note").  A copy of the Note is attached to the Affidavit filed in support of this motion as Exhibit A.  See Affidavit filed in support of this motion which is integrated as if set forth in full.   The Movant is in possession of the original note and is entitled to enforce said note and mortgage (defined below).

4.  Pursuant to that certain Open-End Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property.  A copy of the Mortgage is attached to the Affidavit filed in support of this motion as Exhibit B.  See Affidavit filed in support of this motion which is integrated as if set forth in full.

5.       Said Mortgage was assigned to the Movant by virtue of an assignment of the mortgage, a copy of the assignment(s) is attached to the Affidavit filed in support of this motion

as Exhibit C.  See Affidavit filed in support of this motion which is integrated as if set forth in full.

6.     Said Note and Mortgage are subject to a Loan Modification Agreement modified on Mach 15, 2017. See a copy of the loan modification agreement attached hereto as Exhibit D.

7.     As of March 7, 2023, the approximate outstanding amount of the Obligations less any partial payments or suspense balance is $335,192.23.  See Affidavit filed in support of this motion.

8.     As of March 7, 2023, the Debtor(s) have failed to make payments in an aggregate amount sufficient to satisfy in full the post-petition payment "contractually due"[1] under the Note on February 15, 2022 or any full payment contractually due under the Note thereafter. See Affidavit filed in support of this motion.

9.     A foreclosure judgment entered in favor of the Movant.  See Exhibit E. The Creditor requests the Court take judicial notice of the Connecticut Superior Court's files and records pursuant to Federal Rule of Evidence 201(c)(2).

10.     The estimated market value of the Property is $420,000.00. The basis for such valuation is the Debtor's Schedule A/B. See Document I. D. Number 33 at page 2. The Creditor

---

[1] This terminology has the same meaning as provided in Official Bankruptcy Form 410A, Part 5, Column F.

requests the Court take judicial notice of same pursuant to Federal Rule of Evidence 201(c)(2). See also Affidavit filed in support of this motion.

11.     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in order of priority are: (i) Movant $335,192.23; and (ii) Citibank, N.A. $2,484.14. See Affidavit filed in support of this motion.

12.     The Schedules of the Debtor(s) list an exemption for the Property in the amount of $150,000.00. See Document I. D. Number 33 at page 8. The Creditor requests the Court take judicial notice of same pursuant to Federal Rule of Evidence 201 (C)(2).

13.     Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

     (a)     Movant's interest in the Property is not adequately protected;

     (b)     Post-petition mortgage payments have not been made to the Movant.

14.     That based on the facts set forth in this motion the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the automatic stay and granting the following:

1.      Relief from the automatic stay allowing Movant and any successors or assigns to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property **or alternatively that a preliminary hearing be scheduled on the Motion as prescribed by Congress.**

2.      The 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.      For such other relief as the Court deems proper.

U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust

By */s/ Sara M. Buchanan*
    Sara M. Buchanan
    The Movant's Attorney
    Federal Bar No.ct30340
    Bendett & McHugh, P.C.
    270 Farmington Avenue, Suite 151
    Farmington, CT 06032
    Phone (860) 677-2868
    Fax (860) 409-0626
    Email: BKECF@bmpc-law.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re:21-30520-AMN | ) | **Chapter 13 Proceeding** |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| Debtor | ) | |
| | ) | **Doc. I.D. No.** |
| **U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust** | ) | |
| Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| **and Roberta Napolitano, Trustee** | ) | |
| Respondent | ) | |

<u>**ORDER GRANTING MOTION FOR RELIEF**</u>

   After notice and a hearing, <u>*see*</u> Bankruptcy Code Section 102(1), on U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust, (hereafter, the "Movant"), <u>Motion for Relief from the Automatic Stay</u>, (hereafter, the "Motion")  Doc. I.D. No. _____:

   **IT IS HEREBY ORDERED** that the Motion is Granted—the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Movant, its designated servicing agent, and/or its successors and assigns to commence, continue, and prosecute to judgment a foreclosure action and obtain possession in accordance with applicable state law and otherwise exercise its rights, if any, with respect to real property known as **717 Wheelers Farm Road, Orange, Connecticut 06477** in accordance with applicable state law; and

**IT IS FURTHER ORDERED** that the Movant, its designated servicing agent, and/or its successors and assigns may, at its option, offer, provide, and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement, including accepting a deed in lieu of foreclosure from the Debtor.  The Movant or its designated servicing agent may contact the Debtor via telephone or written correspondence to offer such an agreement.  In the event the Debtor received a Chapter 7 discharge after Movant's loan was originated, any such agreement shall be non-recourse against the Debtor unless Movant's debt was included in a reaffirmation agreement; and

**IT IS FURTHER ORDERED** that the 14-day stay of Fed.R.Bankr.P. 4001 (a)(3) is not applicable and the Movant may immediately enforce and implement this order.

Dated: _____          BY THE COURT

                                       _____
                                       Honorable Ann M. Nevins
                                       U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re:21-30520-AMN | ) | **Chapter 13 Proceeding** |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| Debtor | ) | |
| | ) | **Doc. I.D. No.** |
| **U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust** | ) | |
| Movant | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| **and Roberta Napolitano, Trustee** | ) | |
| Respondent | ) | |

<u>NOTICE OF CONTESTED MATTER RESPONSE DEADLINE</u>

**U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust** (the

"Movant") has filed a **Motion for Relief from Automatic Stay (Real Property),** (<u>the</u>

<u>"Contested Matter</u>"), in the above-captioned case.  Notice is hereby given that any response to the

Contested Matter must be filed with the Court no later than March 30, 2023.  In the absence of a

timely filed response, the proposed order in the Contested Matter ***may*** enter without further notice and hearing, see, 11 U.S.C. § 102 (1).

Dated: **March 16, 2023**                              By:   **U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust**

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| In Re:21-30520-AMN | ) | **Chapter 13 Proceeding** |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| Debtor | ) | |
| | ) | **Doc. I.D. No.** |
| **U.S. Bank Trust National Association as trustee for Brackenridge Mortgage Trust** | ) | |
| Movant | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Patricia Lee Kamens & Roland David Kamens** | ) | |
| **and Roberta Napolitano, Trustee** | ) | |
| Respondent | ) | |

<u>**CERTIFICATION OF SERVICE**</u>

In accordance with the applicable provisions of the Federal Rules of Bankruptcy Procedure, 2002, and 7004, the undersigned certifies that on the 16th day of March, 2023, the following documents were served on the U.S. Trustee and all appearing parties via the court's electronic filing system and by first class mail on the parties listed below:

**Documents Served:**

1. Motion for Relief from Automatic Stay (Real Property)

2. Proposed Order

3. Notice of Contested Matter

**Parties Served Via First Class Mail: (Complete Address Must Be Listed)**
Patricia Lee Kamens & Roland David Kamens
Debtor
717 Wheelers Farm Rd
Orange, CT 06477

Citibank, N.A.
Attn: President/Officer
701 E. 60th St. N
Sioux Falls, SD 57108

By */s/ Sara M. Buchanan*
Sara M. Buchanan
The Movant's Attorney
Federal Bar No.ct30340
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 151
Farmington, CT 06032
Phone (860) 677-2868
Fax (860) 409-0626
Email: BKECF@bmpc-law.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: **Patricia Lee Kamens & Roland David Kamens** | Case No. **21-30520-AMN** |
| | ) Ch **13** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

### RELIEF FROM STAY WORKSHEET-REAL ESTATE

I __April Causey__ (Name and Title) of <u>Rushmore Loan Management Services LLC,</u>
~~ASSISTANT SECRETARY~~

<u>the servicer of the subject loan on behalf of U.S. Bank Trust National Association as trustee for</u>

<u>Brackenridge Mortgage Trust</u> (Name of Organization/Corporation/ Moving Party) (hereinafter,

"Movant") hereby declare (or certify, verify, or state) as follows:

### BACKGROUND INFORMATION

1.    Real property address which is the subject of this motion: **717 Wheelers Farm Road, Orange, CT, 06477**

2.    Lender Name: <u>Merrill Lynch Credit Corporation</u>

3.    Date of Mortgage: <u>January 11, 2006</u>

4.    Post-Petition payment address: <u>Rushmore Loan Management Services, P.O. Box 52708; Irvine, CA 92619-2708</u>

5.   The manner in which the movant perfected its interest in the property: <u>Recorded</u>
     <u>Mortgage</u>

6.   All other material liens and encumbrances on the property:

Citibank, N.A. $2,484.14

## DEBT/VALUE REPRESENTATIONS

7.   Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of
     filing the motion: $<u>335,192.23 as of March 7, 2023</u>

8.   Movant's estimated market value of the real property:$<u> 420,000.00</u>

9.   Source of estimated valuation: <u>Debtor's Schedule A/B</u>

## STATUS OF DEBT AS OF THE PETITION DATE

10.   Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:
      A.   Amount of principal: $ <u>265,082.67</u>
      B.   Amount of interest: $ <u>19,231.50</u>
      C.   Amount of escrow (taxes and insurance): $ <u>29,428.10</u>
      D.   Amount of forced placed insurance expended by Movant: $ <u>0.00</u>
      E.   Amount of Attorney's fees billed to Debtor(s) pre-petition: $ <u>2,955.00</u>
      F.   Amount of pre-petition late fees, if any, billed to Debtor(s): $ <u>0.00</u>

11.   Contractual interest rate: <u>4.125%</u>

      (If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were
      in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the
      exhibit number here:)

N/A

12.   Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:

2 property inspections @ 16.50 = $33, 21 property inspections @ 16.60 = $348.60; $70 record lis pendens; $60 CT property registration; $216.52 state marshal; $360 complaint; $250 FC cost; $315 appraisal; $3,070 committee costs; $16.95 certified mail

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: N/A.)

N/A

## AMOUNT OF ALLEGED POST-PETITION DEFAULT AS OF March 7, 2023

13.  Date last payment was received: April 18, 2022

14. Alleged total number of payments post-petition from filing of petition through payment due on February 15, 2023; 20

15.  List all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
| --- | --- |
| 7-15-21 | 1,786.15 |
| 8-15-21 | 1,786.15 |
| 9-15-21 | 1,786.15 |
| 10-15-21 | 1,786.15 |
| 11-15-21 | 1,786.15 |
| 12-15-21 | 1,786.15 |
| 1-15-22 | 1,786.15 |
| 2-15-22 | 1,786.15 |
| 3-15-22 | 1,786.15 |
| 4-15-22 | 1,839.35 |

| 5-15-22 | 1,839.35 |
|---|---|
| 6-15-22 | 1,839.35 |
| 7-15-22 | 1,839.35 |
| 8-15-22 | 1,839.35 |
| 9-15-22 | 1,839.35 |
| 10-15-22 | 1,839.35 |
| 11-15-22 | 1,839.35 |
| 12-15-22 | 1,839.35 |
| 1-15-23 | 1,839.35 |
| 2-15-23 | 1,839.35 |
| Totals: | $36,308.20 |

### SCHEDULE OF PAYMENTS THAT WERE RECEIVED

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|---|---|---|---|---|---|
| 7/14/21 | 967.47 | | | | |
| 8/13/21 | 1,786.15 | 967.47 | 818.68 | | |
| 9/14/21 | 1,786.15 | 967.47 | 818.68 | | |
| 10/15/21 | 1,786.15 | 967.47 | 818.68 | | |
| 11/18/21 | 1,786.15 | 967.47 | 818.68 | | |
| 12/17/21 | 967.47 | 967.47 | 818.68 | | |
| 1/18/22 | 967.47 | | | | |
| 2/18/22 | 967.47 | 967.47 | 818.68 | | |
| 3/18/22 | 967.47 | | | | |
| 4/18/22 | 967.47 | 967.47 | 818.68 | | |
| Totals: | $12,949.42 | $6,772.29 | $5,730.76 | $ | |

16. Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $ 1,050.00

17. Amount of Movant's filing fee for this motion: $188.00

18. Only to the extent movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition: $N/A

19. Only to the extent movant is seeking payment in the motion, the amount of Movant's post-petition inspection fees:$N/A
Only to the extent movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion: $N/A

20. Only to the extent movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition: $N/A

21. Only to the extent movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable: $446.37

22. Only to the extent movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: $N/A

23. Amount and date of post-petition payments offered by the Debtor and refused by the Movant:

$ 0.00 _____    Date: N/A

$ 0.00 _____    Date: N/A

$ 0.00 _____    Date: N/A

## REQUIRED ATTACHMENTS TO MOTION

The following exhibits are attached to the motion in support of the relief requested.

1.    Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. See Exhibits A, B, and C.

2.    Copies of documents establishing proof of standing to bring this Motion.
      Same as above

3.    Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of mortgage containing the applicable recording information.
      See Exhibit B.

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

[remainder of page intentionally left blank, text continued on next page]

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows:  N/A

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on MAR 1 0 2023 _____ [date]



[signature]    **April Causey**

ASSISTANT SECRETARY

[title]

Subscribed and sworn to before me this _3/10/2023_ [date]

Notary Public: [name]

My commission expires:_____ 'JAN 2 2 2025

ANSELM ANTHONY JOSEPH
Notary Public, State of Texas
Comm. Expires 01-22-2025
Notary ID 132883192

# HOME EQUITY CREDIT LINE AGREEMENT

Date:          January X 2006        **EXHIBIT A**

Credit Limit  **$ 180,000.00**

Borrower:     **Patricia Lee Kamens**
              **Roland David Kamens**

Address:      **717 WHEELERS FARM ROAD**
              **ORANGE, CT 06477**

Account No.:  �one

Loan Purpose: **Heloc Stand Alone**

Lender:       **Merrill Lynch Credit Corporation**

Address:      **4802 Deer Lake Drive East**
              **Jacksonville, FL 32246**

APR was 7.250% on December 27th, 2005 .

Repayment Period:  **20 years**

This agreement will apply to your Home Equity Credit Line account when you borrow under it.

## DEFINITIONS

- "Account" - your Home Equity Credit Line account.
- "Available Credit" - The maximum amount available to you on your Account at any time is called your Available Credit. As you make payments on your Account, the amount you repay is credited to your Account on the day of receipt by us, but this amount does not replenish your available credit for ten (10) business days.
- "Billing Cycle" - a period of about 30 days. Each statement you receive shows transactions for one Billing Cycle.
- "Lender" - the Lender shown above or any Lender to which this Agreement may be transferred.
- "Finance Charge" - is explained in the Finance Charge section below.
- "Draw Period" - the 10-year period beginning on the date of the Agreement. You can only obtain loans on the Account during the Draw Period.
- "Property" - the land and buildings that secure your Account.
- "Repayment Period" - the period during which you will repay the Revolving Balance. The Repayment Period begins the day after the end of the Draw Period. Your Repayment Period is referenced above.
- "Revolving Balance" - the principal balance of all loans made on your Account.
- "You" and "Your" - everyone shown above as "a Borrower." "Borrower" means the same thing.

**USING YOUR ACCOUNT.** Lender agrees to make loans to you under your Account. You may request a loan by writing a Home Equity Credit Line check, by using a credit card issued in connection with this Account, or in any other way Lender permits.

In Wyoming, the first time you draw on your account, the minimum check amount is $1,001.00. In Mississippi, the first time you draw on your account, the minimum check amount is $2,001.00. In Kentucky, the first time you draw on the account, the minimum check amount is $15,000.00.

You may not request any loan after the end of the Draw Period.

## LIMITATION ON THE USE OF THE ACCOUNT.

You may not use the account to (i) finance the purchase of securities, or to repay any debts incurred in the purchase of, or trading or carrying of, securities (ii) pay any amount to an affiliate of Merrill Lynch Credit Corporation, other than Merrill Lynch Bank USA, any subsidiary thereof (including Merrill Lynch Business Financial Services, Inc.), Merrill Lynch Trust Company, FSB, any subsidiary thereof, Merrill Lynch Bank & Trust Co., or any subsidiary thereof or (iii) pay Merrill Lynch Credit Corporation.

## RISKS OF SECURITIES TRADING.

We acknowledge, understand, and agree that securities trading has certain risks including the risk of losing our investment. We understand that we would have an additional heightened risk of loss if we were to use our account proceeds for securities trading since the collateral for the account is the property. Further, we understand that we could lose the property if we were unable to repay the outstanding principal balance, whether or not we made or lost money on our securities trading. Additionally, in some states, we understand that we could also be liable for the difference between the outstanding principal balance and the value of the property at the time of foreclosure. Therefore, we expressly understand, acknowledge, and agree that we could lose both the property and any securities purchased with account proceeds and additionally be liable for any deficiency owed on the account (if permitted by applicable state law.)

**CREDIT LIMIT.** Your Credit Limit is shown at the beginning of this agreement. Lender is obligated to make loans up to the amount of your Credit Limit. Lender does not have to make any loan if doing so would cause your Credit Limit to be exceeded. You agree not to borrow more than your Credit Limit. If you do go over your Credit Limit, you agree to pay back any extra amount immediately.

**REFUSING TO MAKE LOANS. REDUCING YOUR CREDIT LIMIT.** Lender may refuse to make a loan, or may reduce your Credit Limit, if:



- The value of the Property declines significantly below its original appraised value.
- Lender reasonably believes you will not be able to make all your payments on time because your financial circumstances have changed materially.
- You are in Default of a material obligation in this agreement, or you are in Default under the Default section of this Agreement.
- Lender is limited by government action from imposing a Finance Charge at the Annual Percentage Rate.
- Lender's security interest in the Property is adversely affected by government action so that the value of the security interest is less than 120% of your Credit Limit.
- A federal regulator notifies Lender that it would be unsafe or unsound to make a loan under your Account.
- The Annual Percentage Rate exceeds the maximum legal rate.
- The Lender has reviewed the loan agreement and required loan disclosures and determined that the documents are incomplete or are not executed as required to create a valid, enforceable lien.

## WRITING CHECKS ON YOUR ACCOUNT.

Lender will pay a check on your Account if:
- It is properly signed and completed, and
- There seems to be no problem with the check, and
- It is written in U.S. dollars, and
- It is written on Lender's Home Equity Credit Line check form, and
- Your Account has Available Credit to cover the amount of the check, and
- You are not in Default.

Otherwise, Lender may return the check. If your checks have been reported as lost or stolen, you may have to obtain checks with a new account number.

## CHECK STOP PAYMENT ORDERS.

You may request Lender to stop payment on any check you have written on your Account. Here are some stop payment rules:
- The order must be given in time. Otherwise, Lender may not be able to stop the payment. One normal working day is generally enough time, but not always.
- Lender cannot stop payment without complete, accurate information about the check.
- If Lender pays a check on which you stopped payment, you must prove that you didn't owe the money. Otherwise, Lender does not have to pay you back.

## MONTHLY PAYMENT.

You agree to repay all loans under your Account as provided in this Agreement. Payments will be due monthly during the Draw and Repayment Period. You also agree to pay Lender all Finance Charges on the loans and all other fees. Finance Charges are explained in the "FINANCE CHARGE" section below. You also agree to pay any other amounts you may owe Lender under "COLLECTION COSTS" below. You agree to pay at least your minimum payments by the date shown in your monthly statement.

**Monthly Payments on the Revolving Balance during the Draw Period:** During the Draw Period, your minimum monthly payment will be equal to the amount of Finance Charge you owe on the Revolving Balance, but at least $50.00, plus any fees and insurance premiums charged during the Billing Cycle. This payment may not repay any of the principal on your Account.

Of course, if the total Revolving Balance plus Finance Charge and other fees and charges is less than $50.00, then the $50.00 minimum does not apply.

**Monthly Payments on the Revolving Balance during the Repayment Period:** Your minimum monthly payment on the Revolving Balance is equal to the amount of the Revolving Balance at the end of the Draw Period, divided by the number of months in the Repayment Period, plus Finance Charges and any fees or other charges charged during the Billing Cycle. For example, if your balance is $20,000.00, and you have a Repayment Period of 20 years, (240 months), your minimum monthly payment will be $20,000.00/240 or $83.34 plus Finance Charges and other fees. The last payment during the Repayment Period would be equal to the remaining Revolving Balance plus all Finance Charges and other fees.

**Additional Amounts as Part of Minimum Payment:**
These amounts will also be added into your minimum payment.
- Any amount you owe the Lender for property insurance premiums.
- All previous payments you have not paid.
- Any amount over your Credit Limit.

**Automatic payment:** You may elect to have automatic payments by completing and signing "Home Equity Direct Debit Authorization Form." If you choose this method of payment, please read the following information carefully.

If your deposit account is at the Lender or a related bank, and your minimum payment exceeds the funds in that account, you agree that the Lender may choose either to overdraw your account and make the payment, or not to make the payment. Either way, you will be responsible for any resulting late fees, extra Finance Charge, NSF fees, or other charges.

If you choose automatic payment, but the automatic payment is not made for any reason, you are still responsible for your monthly payment. Automatic payments may end because there is not enough money in the deposit account to cover the minimum payment. They may also end if the account is closed, or if you cancel the automatic payments.

**RULES ABOUT PAYMENTS.** You must pay in U.S. dollars to Lender at the address listed under **"HOW TO CONTACT THE LENDER, For Payments"** in this agreement.

To the extent permitted by law, payments received after 3:00pm EST or on a weekend or holiday will be credited to your Account on the next business day. If the due date on your statement is a weekend or holiday, you agree to get your payment to the Service Center by 3:00pm EST of the previous business day. Lender may reject any payment check written on a foreign bank account. If Lender accepts a foreign check, Lender may charge your Account for any collection costs. You must send the payment coupon with your loan payment. (The payment coupon is the top portion of your monthly statement.) If not, your payment may be credited late and you may have to pay extra Finance Charges or late payment fees. Or Lender may return your payment to you.

**FINANCE CHARGE.** Lender will charge interest (Finance Charge) for each day that a loan is not repaid. The interest portion of the Finance Charge begins to accrue on the date each loan transaction takes place and will continue until the Revolving Balance is paid in full. The interest portion of the Finance Charge is calculated the same way during the Draw Period and the Repayment Period. The interest portion of the Finance Charge for each day in a Billing Cycle is the "Daily Principal Balance" times the "Daily Periodic Rate." "Daily Principal Balance" and "Daily Periodic Rate" are explained below. To get the total interest portion of the Finance Charge for a Billing Cycle, Lender adds up the interest for each day in the Billing Cycle. Then, Lender adds any other amounts charged during the Billing Cycle that are Finance Charges - see "OTHER CHARGES " section below.

**Daily Principal Balance.** To get the Daily Principal Balance Lender takes the beginning Balance each day, adds that day's transactions and loans, and subtracts that day's principal payments and credits.

**VARIABLE PERIODIC RATES AND ANNUAL PERCENTAGE RATE.**
**Periodic Rates on the Revolving Balance.** The daily periodic rate as of December 27th, 2005 used to figure the interest portion of the **FINANCE CHARGE** on the Revolving Balance was .0199%. The corresponding ANNUAL PERCENTAGE RATE **is 7.250%.** The **ANNUAL PERCENTAGE RATE** and the daily periodic rate may change daily as indicated below. The **ANNUAL PERCENTAGE RATE** includes only interest and no other charges.

The **ANNUAL PERCENTAGE RATE** is variable and is equal to the highest Prime Rate (U.S.) listed in the "Money Rates" section of *The Wall Street Journal* for that day with a margin of **0.0000%.** If *The Wall Street Journal* does not publish a Prime Rate for that day, we will use the highest Prime Rate listed in the "Money Rates" section of *The Wall Street Journal* on the last date the Prime Rate was published.

If *The Wall Street Journal* fails to publish a Prime Rate for 4 consecutive days, Lender may use a substitute index, to be determined at that time, that has a historical movement substantially similar to the prime rate published in *The Wall Street Journal* and that would result in an **ANNUAL PERCENTAGE RATE** substantially similar to a rate based on the Prime Rate published in *The Wall Street Journal.*

If that highest Prime Rate (U.S.) changes, your **ANNUAL PERCENTAGE RATE** will change. The **ANNUAL PERCENTAGE RATE** and the Daily Periodic rate that apply to your Account may change daily. If the **ANNUAL PERCENTAGE RATE** and the Daily Periodic Rate increases the interest portion of your Finance Charge and your minimum payment may increase.

**Maximum/Minimum Rate.** The ANNUAL PERCENTAGE RATE will never exceed the greater of (1)15%, or (2) 8% over your initial rate. If state usury law requires a lower maximum **ANNUAL PERCENTAGE RATE,** the lower maximum **ANNUAL PERCENTAGE RATE** will apply. The **ANNUAL PERCENTAGE RATE** will never be lower than zero or the margin, whichever is greater.

**OTHER CHARGES.** You agree to pay these fees:

Paid to Lender:

| | | | |
|---|---|---|---|
| Origination Fee: | (FINANCE CHARGE) | $ | 0 |
| Discount Points: | (FINANCE CHARGE) | $ | 0 |
| Application Fee: | (FINANCE CHARGE) | $ | 0 |
| Processing Fee: | (FINANCE CHARGE) | $ | 0 |
| Closing Fee: | (FINANCE CHARGE) | $ | 0 |

Paid to others:

| | | | |
|---|---|---|---|
| Doc Prep Fee | | $ | 0 |
| Title Search/Abstract: | | $ | 0 |
| Title Insurance - Owner's Coverage | | $ | 0 |
| Title Insurance - Lender's Coverage | | $ | |
| Mortgage/Intangible Tax: | | $ | 0 |
| City/County Tax/Stamps: | | $ | 0 |
| State Tax/Stamps: | | $ | |
| Recording Fee: | | $ | 0 |
| Tax Service Fee: | (FINANCE CHARGE) | $ | 0 |
| Appraisal Fee: | | $ | 0 |
| Attorney Fee: | | $ | 0 |
| Loan Broker Fee: | (FINANCE CHARGE) | $ | 0.00 |
| Flood Certification Fee: (FINANCE CHARGE) | | $ | 0 |
| Credit Report: | | $ | 0 |
| Settlement /Closing Fee: (FINANCE CHARGE) | | $ | 0 |
| Endorsement Fee: | | $ | 0 |
| Notary Fee: | | $ | 0 |
| Overnight Mail Fee: | | $ | 0 |
| Mtg. Svcs Doc Prep Fee | | $ | |
| Application Conversion Fee: | | $ | |
| Processing Conversion Fee: | | $ | |
| Other: | | $ | |
| **TOTAL** | | $ | |



- Annual Fee: **$0.00**.
- Early Termination Fee: **$0.00**.
- Late Payment Fee: **$20.00** if Lender does not receive your minimum payment by the payment date on your monthly statement except in the following states where the late payment fee is:

California - Greater of $5.00 or 6% of the principal and interest portion of the installment not paid within 10 days of due date; Colorado - up to 5% of the unpaid payment,if not paid within 10 days of the due date; District of Columbia - 5% of the delinquent installment if not paid within 10 days of due date; Hawaii - $20.00, not to exceed 5% of the installment if not paid within 10 days of due date; Georgia - 5% of the installment if not paid within 10 days of the due date; Idaho - greater of 5% of the unpaid amount or $12.50, if not paid within 15 days of the due date; Illinois - 5% of the loan installment if payment more than 10 days late; Indiana - $16.00 if more than 10 days late; Iowa - 5% of the installment past due up to a maximum of $15.00 if not paid within 10 days of the due date; Kansas - Lesser of 5% of the installment past due or $25.00 if not paid in full within 10 days; Louisiana - 5% of the installment past due; Massachusetts - lesser of 10% of the installment due or $10.00; Michigan - greater of $15.00 or 5% of the installment past due; Minnesota - greater of 5% on payments or $5.20 if not made within 10 days of the due date; Mississippi - greater of $5.00 or 4% of the delinquent amount, if not received within 15 days of due date; Missouri - greater of 5% of minimum payment due or $15.00, not to exceed $50.00, if not received within 15 days of due date; Montana - 5% of the amount past due, New Jersey - 5% of the payment amount if not paid within 15 days of the due date; Ohio - greater of 5% of the minimum payment or $15.00 if not paid in full within 10 days after due date; Oklahoma - not less than $5.00 or greater than 5% of the amount past due if not paid after 10 days; Oregon - lesser of 5% or $20.00 if not paid within 15 days of due date; Pennsylvania - $20.00 if not paid within 15 days of the due date; South Carolina - lesser of the amount allowed by the Consumer Protection Code or 5% of amount past due if not paid within 10 days of due date; Virginia - 5% of the amount of the late payment if not paid within 7 days of its due date; Washington - 10 % on amounts paid 15 or more days late; West Virginia - 5% up to $15.00 if not paid within 15 days of the due date; Wisconsin - 5% for payments not received within 15 days of the due date for credit lines over 25,0000; Wyoming - greater of $10.00 or 5% of the late payment if not paid in full within 10 days of due date.

You must also follow the "RULES ABOUT PAYMENTS" sections above.

- Returned Check Fee: **$30.00** except in the following states where the fee is: Maine- actual charge imposed by returning financial institution, Maryland-$15.00, Mississippi - $15.00, Missouri - $15.00 plus amount charged by draw institution, West Virginia - $15.00. This fee is not charged in Virginia and Wyoming.
- Duplicate Documentation Fee: **$2.00** for each copy of a monthly statement, sales slip, refund slip, cash advance or other document that is requested. If the copy is with respect to a billing error, there will be no charge.
- Reconveyance fees: Paid when the Property in some states is reconveyed from the deed of trust after your account is paid off and terminated. California ($14.00), Idaho ($3.00), Nevada - White Pine County ($17.00), all other Nevada counties ($7.00), Oregon ($30.00), Utah ($10.00), Washington ($18.00).

**SECURITY INTEREST.** To protect Lender if you are in default, all amounts you owe under this agreement are secured by this property:

717 WHEELERS FARM ROAD, ORANGE, CT 06477

**PROPERTY INSURANCE.** You are required to maintain Property insurance (which includes flood insurance, if your Property is located in a flood plain) for the amount the Lender may require. *You may obtain insurance from anyone you want, that is acceptable to the Lender.*

If you fail to maintain the required insurance, Lender may purchase insurance to protect its interest in the Property. You agree to reimburse the Lender upon demand for any such insurance it purchases. You also agree that any amount advanced by Lender to pay insurance premiums shall be treated as a loan on your Account until you repay it.

**TAX DEDUCTIBILITY.** You should contact your tax advisor regarding the deductibility of Finance Charges on your Account. Deductibility will vary depending on individual circumstances.

**DEFAULT.** You will be in default if:
- There has been any fraud or material misrepresentation in connection with your Account;
- You do not make a payment on time;
- Anything you do or don't do adversely affects the Property or Lender's rights in the property;
- You transfer title to the Property or sell the Property without Lender's permission (see "TRANSFER OF PROPERTY" below).
- We receive a notice from a subordinate lienholder, under 330 Maine Revised Statutes 505.5 (b) that future advances on the Account will be subordinated to its lien.

**LENDER RIGHTS IF YOU ARE IN DEFAULT.** If you are in default, Lender may terminate the Account and demand that you pay your full Account balance immediately. If any law gives you time to remove the default, Lender will let you try to remove the default during that time.



Multi State Line Agreement
ML

Lender may also use any other legal right it has. For example, Lender may foreclose on the Property or take funds out of any deposit account you have with Lender or any related Lender that you have assigned to Lender.

**TRANSFER OF PROPERTY.** You understand that the deed of trust or mortgage that secures your obligations under this Agreement contains a provision that permits the Lender, to the extent permitted by federal law, to require you to pay all amounts owing under this Agreement if any part of the Property is sold or transferred.

**COLLECTION COSTS.** You will repay Lender any money it spends protecting the Property or enforcing this agreement or the mortgage or deed of trust that secures it. This includes attorney's fees except in California or if not permitted by the law. Any amount spent may be treated as a loan on your Account until you repay it.

**DELAY IN ENFORCEMENT.** Lender can delay enforcing its rights under this agreement without losing them. Lender will still be able to recover all amounts you owe.

**CANCELING YOUR ACCOUNT.** You may cancel the Account at any time, in writing. But you must still repay the amount you owe.

**CHANGE IN TERMS.** Lender can change the terms of this agreement with 15 days notice if:
* The change will benefit you during the whole future time this agreement is in effect; or
* The change is an insignificant change in terms.
Lender may determine whether a change meets one of those requirements.

**INFORMATION.** You agree to give Lender financial information in the form that Lender may request.

**JOINT ACCOUNTS.** Each Borrower agrees to pay all amounts on your Account, even if:
* Another Borrower won't or can't pay;
* Another Borrower received the loan money.
Each Borrower can cancel the Account in writing, even if the other Borrower does not want the Account canceled.

**WHAT LAW APPLIES.** United States law and the law of the State where the Property is located apply to this agreement.

**"PAYMENT IN FULL" OF DISPUTED AMOUNTS.** If you attempt to resolve any disagreement about any amount you owe by sending Lender a check marked "Payment in full" or with similar language, you must send it with an explanation to Lender at any address Lender may specify for such checks.

If you send your check to any other address and Lender cashes it, Lender may still collect any other amount you owe.

**FINAL AGREEMENT.** This Agreement and any other documents evidencing or securing your loan with Lender constitute a final expression of our Agreement and may not be contradicted by evidence of any alleged oral Agreement.

**IMAGE PROCESSING.** Lender or Borrower may create an accurate electronic, magnetic, microfilm, or other image of this Agreement. As part of their normal business practice, they may then destroy the original after creating that image. A reproduction of this Agreement from that image will be treated the same as the original Agreement in court and for any other purpose.

**CREDIT BUREAU DISPUTES**
If you believe that we, as the Lender, have inaccurately reported information on your credit history to a credit bureau, please call 1-877-461-2437 or write to Merrill Lynch Credit Corporation, Home Equity Service Center, Mailstop SV-24, 4001 Leadenhall Road, Mount Laurel, NJ 08054.

**YOUR BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE**

The following is important information about your rights and Lender's responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.**

**If there's an Error or You Have Questions about Your Statement.** If you think your statement is wrong, or if you need more information about an item on the statement, YOU MUST WRITE TO LENDER ON A SEPARATE SHEET OF PAPER AND SEND IT TO THE LENDER:
c/o Merrill Lynch Credit Corporation
Home Equity Service Center
P.O. Box 5443
Mt. Laurel, NJ 08054

Write to Lender as soon as possible. Lender must hear from you no later than 60 days after Lender sent you the first statement on which the error or problem appeared. You can telephone Lender, but doing so will not preserve your legal rights under the Fair Credit Billing Act.
In your letter, include the following information:

(1)   Your name and Account number.
(2)   The dollar amount of the suspected error.
(3)   Date the transaction occurred.
(4)   Describe the error, and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you authorized Lender to pay your monthly Account payment automatically from your checking or savings account, you can stop payment on any amount you think is wrong.

To stop payment, your letter must reach Lender by three business days before the automatic payment is scheduled to occur.

**Your Rights and Lender's Responsibilities after Lender Receives Your Written Notice.** Lender must acknowledge your letter within 30 days unless Lender has corrected the error by then. Within 90 days, Lender must either correct the error or explain why Lender believes the statement was correct.

After Lender receives your letter, Lender cannot try to collect any amount you questioned or report your Account as past due. Lender can continue to bill you for the amount you questioned, including Finance Charges, and Lender can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while Lender is investigating, but *you are still obligated to pay the parts of your Account that are not in question.*

If Lender finds the Lender has made a mistake on your Account, you will not have to pay any Finance Charges, related to any questioned amount. If Lender didn't make any mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Lender will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount Lender thinks you owe, Lender may report your Account as past due. However, if Lender's explanation does not satisfy you and you write Lender within ten days, telling Lender that you still refuse to pay, Lender must tell anyone Lender reported your Account to that you have a question about your statement. And, Lender must tell you the name of anyone to whom Lender reported you. Lender must tell anyone Lender reported you to that the matter has been settled when it is finally resolved.

If Lender doesn't follow these rules, Lender will not be permitted to collect this first $50.00 of the questioned amount, even if the statement is correct.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a)   You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b)   The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**HOW TO CONTACT THE LENDER**
**For Payments**
c/o Merrill Lynch Credit Corporation
Home Equity Service Center
P.O. Box 5445
Mt. Laurel, NJ 08054

**For Billing Inquiries**
c/o Merrill Lynch Credit Corporation
Home Equity Service Center
P.O. Box 5443
Mt. Laurel, NJ 08054

**For General Inquiries**
c/o Merrill Lynch Credit Corporation
Home Equity Service Center
P.O. Box 5443
Mt. Laurel, NJ 08054

**SIGNATURES.** The persons signing below have received a copy of the agreement, read the agreement, understand it, and agree to it. **Read this agreement before you sign. Do not sign it if any spaces are left blank. You are entitled to a copy of this agreement.**

*Patricia Lee Kamens*
Borrower  Patricia Lee Kamens

*Robert D Kamens*
Borrower  Roland David Kamens

*Roland David Kamens*
Borrower

_____
Borrower

## Allonge to Note

**Borrower's Name:**   PATRICIA LEE KAMENS
ROLAND D KAMENS

**Borrower's Address:**   717 Wheelers Farm Rd
ORANGE, CT  6477

**Loan Amount:**   $180000

**Loan No.:**   ▬▬▬▬▬

Pay to the Order of:

Without Recourse
Merrill Lynch Credit Corporation,
By PHH Mortgage Corporation, F.K.A. Cendant Mortgage Corporation
Authorized Agent

Katherine Rainey  Assistant Vice-President

VOL 5 4 5 PG 0 1 7 1

EXHIBIT B

_____ State of Connecticut _____ Space Above This Line For Recording Data _____

**OPEN-END MORTGAGE**
(With Future Advance Clause)

Record and Return to:
Merrill Lynch Credit Corporation
2001 Bishops Gate Blvd. Mount Laurel, NJ

1. **DATE AND PARTIES.** The date of this Open-End Mortgage (Security Instrument) is January X, 2006
and the parties, their addresses and tax identification numbers, if required, are as follows:

MORTGAGOR: Patricia Lee Kamens, A MARRIED PERSON
Roland David Kamens, A MARRIED PERSON
717 WHEELERS FARM ROAD, ORANGE, CT 06477

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and
acknowledgments.

LENDER:
Merrill Lynch Credit Corporation
4802 Deer Lake Drive East Jacksonville, FL 32246

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants,
bargains, conveys and mortgages to Lender with mortgage covenants the following described property:
See Attached

The property is located in _____ NEW HAVEN _____ at 717 WHEELERS FARM ROAD
                                              (County)
_____ ORANGE _____, Connecticut ____ 06477 ____
       (Address)                              (City)                                      (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). This Security
Instrument is made upon the statutory condition.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
not exceed $ 180,000.00 _____ . This limitation of amount does not include interest and other fees and
charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the
terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security
Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), consumer revolving loan agreement(s), contract(s),
   guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or
   substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of
   such debt(s).)*

   As indicated in the home equity line agreement dated 1/9/2006, with a maturity
   date of 1/9/2036.

CONNECTICUT - HOME EQUITY LINE OF CREDIT MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-CT 10/9/98

*(page 1 of 4)*

C465(CT) (98011).02                                VMP MORTGAGE FORMS - (800)521-7291

VOL 545 PG 0172

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, consumer revolving loan agreement, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval. In addition, Mortgagor agrees to terminate promptly the right to any further advances or limit the amount of such advances on any prior mortgage providing for optional future advances, pursuant to Lender's request and Conn. Gen. Stat. Ann. § 49-2(c), as amended.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium, common interest community or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall imediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

*(page 2 of 4)*

VOL 545 PG 0173

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

7. **DEFAULT.** Mortgagor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain, (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

8. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

9. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

10. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

*(page 3 of 4)*

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-CT 10/6/98
C486(CT) (99011.02

VOL 545 PG 0174

11. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

12. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

13. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

14. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

15. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

16. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit.

17. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

18. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]
☐ Assignment of Leases and Rents  ☐ Other _____

19. ☐ **CONSTRUCTION LOAN.** This Security Instrument secures an obligation incurred for the construction or repair of a building or an improvement on the Property.

20. ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_Patricia Lee Kamens_ 01/11/2006   _Roland David Kamens_ 01/11/06
(Signature) Patricia Lee Kamens   (Date)   (Signature) Roland David Kamens   (Date)

_Caralee M. Kamens_ CARALEE M. KAMENS 01/11/2006

_____   _____
(Witness as to all signatures) Sean E. Sweeney   (Witness as to all signatures) Gregory Harris  Gregory Harris

**ACKNOWLEDGMENT:**
STATE OF CT _____, COUNTY OF NEW HAVEN _____ } ss. Orange
(Individual)   This instrument was acknowledged before me this 11th _____ day of _ January, 2006 _____
by Patricia Lee Kamens, Roland David Kamens, Caralee M. Kamens _____
My commission expires:
(Seal)
_____
SEAN E. SWEENEY
COMMISSIONER OF THE
SUPERIOR COURT   (page 4 of 4)

© 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REMTG-CT 10/9/98

C485(CT) (9901) 02

VOL 545 PG 0175

# SIGNATURE ADDENDUM TO CONNECTICUT MORTGAGE

Additional Mortgagors:
, **Caralee M. Kamens**

**ADDITIONAL SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in the Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1 of the Security Instrument.

_____   01/11/2006        _____
Borrower , **Caralee M. Kamens**      -Date        Borrower                            -Date

_____                        _____
Borrower                            -Date        Borrower                            -Date

_____                        _____
Borrower                            -Date        Borrower                            -Date

_____                        _____
(Witness as to all signatures)                   (Witness as to all signatures)

**ACKNOWLEDGMENT:**
STATE OF **CT**                    , COUNTY OF **NEW HAVEN**        } ss. Oranage
(Individual)  This instrument was acknowledged before me this 11th      day of   January, 2006
by   Caralee M. Kamens

My commission expires:
(Seal)

_____
SEAN E. SWEENEY
COMMISSIONER OF THE
SUPERIOR COURT

CONNECTICUT SIGNATURE ADDENDUM TO MORTGAGE
C464(CT) (0007).01                      VMP MORTGAGE FORMS - (800)521-7291                      7/00

VOL 545 PG 0176



**MORTGAGE RIDER**

Loan number:

This Rider is made this 29th day of January 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, (Security Instrument) of the same date given by the undersigned Patricia Lee Kamens, Roland David Kamens, Caralee M. Kamens (the Borrower) to secure Borrowers' Note (the Note) to Merrill Lynch Credit Corporation (the Lender) of the same date and covering the Property described in the Security Instrument and located at:

717 WHEELERS FARM ROAD, ORANGE, CT 06477

Borrower and Lender further covenant and agree that the Note is to be secured by a Security Instrument that is in first-lien position on the Property. Accordingly, Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement;

(b) contest the lien in good faith by, or defends against enforcement in, legal proceedings, which Lender's opinion operate to prevent enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or

(c) secures from the holder of the lien an agreement satisfactory to Lending subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which the notice is given, Borrower shall satisfy the lien or take one or more of the actions including paying all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this Rider.

_+ Patricia Lee Kamens_ (Seal)
Patricia Lee Kamens

_X Caralee M. Kamens_ (Seal)
Caralee M. Kamens

_Roland David Kamens_ (Seal)
Roland David Kamens

_____ (Seal)

First Lien HELOC Rider

HELOC32 (010204)

VOL 545 PG 0177

SCHEDULE  A

ALL that certain piece or parcel of land, with all the improvements thereon, situated in the Town of Orange, County of New Haven and State of Connecticut, being Lot #1 as shown and designated on a "Map of Proposed Lots On Property of Donald Miner, Orange, Conn., Scale 1 inch equals 50 feet Rev. Feb. 7, 1961, Add Mar. 6, 1961" Richard J. Nowakowski, Land Surveyor, on file in the Orange Town Clerk's Office, bounded and described as follows:k

| | |
|---|---|
| NORTHWEST | by Wheeler's Farms Road, 182.0 feet; |
| WEST | by the junction of Wheeler's Farms Road and a proposed road, to be known as Hundred Acre Road, 43.20 feet; |
| SOUTHWEST | by said proposed road, to be known as Hundred Acre Road, 183.0 feet; |
| SOUTHEAST | by Lot #2, as shown on said map, 193 feet, more or less; and |
| NORTHEAST | by land now or formerly of Michael and John Jelasko, 212 feet, more or less. |

EXCEPTING THEREFROM so much as was conveyed to the State of Connecticut by Warranty Deed dated December 1, 1979 and recorded in said Land Records in Volume 272 at Page 1011.  See Also items recorded in said Land Records in Volume 201 at Page 227 and Volume 201 at Page 232.

Jan 18. 2006

Received for record
at 8:35 m. A M, and recorded by
Patrick B. O'Sullivan Town Clerk

Book: 545 Page: 171 Seq: 7 of 7

**EXHIBIT C**



BK **670** PG **317-318**

Prepared By:
Roosevelt Management Company, LLC

When recorded mail to:
Abstrax, LLC
Attn: Collateral Dept.
88 Silva Lane, 2nd Floor
Middletown, RI 02842

Loan Number

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, Bank of America, N.A., successor by merger to Merrill Lynch Credit Corporation, whose address is 4804 Deer Lake Drive East, Jacksonville, FL 32246, hereby assign and transfer to U.S. Bank National Association, not in its individual capacity, but solely as trustee for the RMAC Trust, Series 2016-CTT, whose address is 60 Livingston Avenue, EP-MN-WS3D, Saint Paul, MN 55107, all its right, title and all beneficial interest in and to a certain Mortgage and Note, executed by Merrill Lynch Credit Corporation to Patricia Lee Kamens, a married person and Roland David Kamens, a married person and bearing the date of January 11, 2006 and recorded on January 18, 2006, with an original loan amount of $180,000.00 recorded in the Land Records of the Town of Orange, State of CT, in Book 545 at Page 0171 or Instrument # NA.

Property Address: 717 Wheelers Farm Road, Orange, CT 06477
Legal Description: See Attached Exhibit A.

AUG 0 9 2017

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on _____

Bank of America, N.A., successor by merger to Merrill Lynch Credit Corporation by Rushmore Loan Management Services LLC, its appointed attorney in fact

By: 

Name:  **Tim Lightfoot**

Title:  **Vice President**

State of Texas **Dallas**
County of  **Nicole Johnson**
Before me _____, on this day personally appeared  **Tim Lightfoot** _____, known to me (or proved to me on the oath of _____ or through _____ to be the person whose name is subscribed to the foregoing instrument and acknowledge to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 9 day of August, 20 17

(SEAL)

Notary Public Signature

NICOLE JOHNSON
My Notary ID # 129379313
Expires April 8, 2021

EXHIBIT A

All that certain piece or parcel of land, with all the improvements thereon, situated in the Town of Orange, County of New Haven and State of Connecticut, being Lot #1 as shown and designated on a "Map of Proposed Lots On Property of Donald Miner, Orange, Conn., Scale 1 inch equals 50 feet Rev. Feb. 7, 1961, Add Mar. 6, 1961" Richard J. Nowakowski, Land Surveyor, on file in the Orange Town Clerk's Office, bounded and described as followed:

NORTHWEST by Wheeler's Farms Road, 182.0 feet;
WEST by the junction of Wheeler's Farms  Road and a proposed road, to be known as Hundred Acre Road, 43.20 feet;
SOUTHWEST by said proposed road, to be known as Hundred Acre Road, 183.0 feet;
SOUTHEAST by Lot #2, as shown on said map, 193 feet, more or less; and
NORTHEAST by land now or formerly of Michael and John Jelszko, 212 feet, more or less.

Property Address: 717 Wheelers Farm Road, Orange, CT 06477

Received for Record at Orange, CT
On 10/23/2017 At 10:04:00 am
*[signature]*

EXHIBIT C

**CONNECTICUT**
TOWN OF **ORANGE**
LOAN NO.

WHEN RECORDED MAIL TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

TO ALL PEOPLE WHOM THESE PRESENTS SHALL COME, GREETING THAT for good and valuable consideration, the receipt of which is hereby acknowledged, **U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT**, located at **60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107**, Assignor, does hereby assign, transfer, convey, and set over unto **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BRACKENRIDGE MORTGAGE TRUST**, located at **7114 E. STETSON DRIVE SUITE 250, SCOTTSDALE, AZ 85251**, Assignee, its successors and assigns, all Assignor's rights and interest in and to that certain Mortgage dated **DECEMBER 28, 2005**, executed by **PATRICIA LEE KAMENS, A MARRIED PERSON, ROLAND DAVID KAMENS, A MARRIED PERSON**, Mortgagor, to **MERRILL LYNCH CREDIT CORPORATION**, Original Mortgagee, and recorded in the land records in Volume 545 at Page 0171 of the record of Mortgages for the Town of ORANGE, State of CONNECTICUT, and the land with all the improvements thereon known as **717 WHEELERS FARM ROAD, ORANGE, CT 06477** and conveyed thereby, and more particularly described on said Mortgage referred to herein.

TOGETHER WITH all rights accrued or to accrue under said Mortgage.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on _____ **JUL 12 2022**
**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, AS ATTORNEY IN FACT**

Name: Cassandra Acosta
Title: Assistant Secretary

__Christopher Lederma__ , Witness                    __Tamara Sulea__ , Witness

STATE OF _____        COUNTY OF _____   ) ss.
On _____, before me, _____, personally appeared _____, known to me to be the _____ of RUSHMORE LOAN MANAGEMENT SERVICES LLC AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____ (COMMISSION EXP.        **See Attached Acknowledgment**

_____
NOTARY PUBLIC

Page 1 of 1

## ALL-PURPOSE ACKNOWLEDGEMENT

> **A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document**

**State of <u>California</u>**
**County of <u>ORANGE</u>**

On __JUL 1 2 2022__, before me, **Theresa J. Barrett, Notary Public**, personally appeared, ___Cassandra Acosta___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

THERESA J. BARRETT
Notary Public - California
Orange County
Commission # 2374787
My Comm. Expires Oct 7, 2025

Signature of Notary
(Notary Name): **Theresa J. Barrett**
My commission expires: 10/7/2025

(seal)

EXHIBIT D

**After Recording Return To:**
Bank of America, N.A.
Bank of America Office Park
9000 Southside Boulevard Building 700
Jacksonville, FL 32256

This document was prepared by Bank of America, N.A.

_____[Space Above This Line For Recording Data]_____

# HOME EQUITY MODIFICATION AGREEMENT

Borrower ("I"):[1] Patricia Lee Kamens and Roland D Kamens

Original Lender / Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of home equity mortgage, deed of trust, or security deed ("Mortgage") and Note or
Loan Agreement ("Note"): December 28, 2005
Loan Number: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Property Address (See Exhibit A for Legal Description if applicable) ("Property"):
717 Wheelers Farm Rd, Orange, CT 06477-3721

If my representations in Section 1 continue to be true in all material respects, then this
Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (i) the Mortgage or Deed of Trust ("Mortgage") on the Property, and (ii) the
Note secured by the Mortgage. The Mortgage and Note together, as they may
previously have been amended, are referred to as the "Loan Documents" and the

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of
this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa
where appropriate.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*(page 1 of 15 pages)*                                           PKG 194/C3_14304-4
(C3_14304-4) Bank of America, N.A.

obligation evidenced by the Loan Documents is referred to as the "Loan." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

I understand that I must sign **and return one copy** of this Agreement to the Lender on or before **February 21, 2017.** This Agreement will not take effect unless the conditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  The Property has not been condemned and it is my principal residence;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification program ("Program"));

    E.  Under penalty of perjury, any and all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for modification of my Loan, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under any Trial Period Plan or Loan Workout Plan.

2. **Conditions to Modification.**

I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;

B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts it by returning to me a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

C. I cannot make any alterations or changes to any term or provision of this Agreement without the written consent of the Lender.

D. Notwithstanding any other provision in this Agreement, I will not be legally obligated to the Agreement until I make my first payment under the agreement on the Modification Effective Date, as defined in section 3 below.

3. **The Modification.**  If my representations in Section 1 continue to be true and correct and all conditions to the modification set forth in Section 2 have been met, the Loan Documents will become modified as provided in this Agreement as of March 15, 2017 (the "Modification Effective Date"). The first modified monthly payment will be due on March 15, 2017.

A. The New Maturity Date will be February 15, 2047.

B. The principal balance of my modified Loan will: (i) <u>include</u> all amounts and arrearages that are accrued and unpaid, including unpaid and deferred interest, real estate taxes, insurance premiums, and other out-of-pocket costs and expenses incurred by Lender in performing its servicing obligations (collectively "Capitalized Amounts"), totaling $97,518.77; and (ii) <u>exclude</u> unpaid late charges, insufficient fund fees and certain other home equity loan or line of credit-related fees, which will be forgiven. Any fees or charges incurred in connection with the servicing of your loan which were not invoiced before we calculated the Capitalized Amounts will appear on your monthly statement under "Fees and Charges." These amounts may be paid when billed or at any time afterward. They will not accrue interest or late fees. If they remain unpaid, they must be satisfied at the earlier of: (i) the date you sell or transfer an interest in the Property, (ii) the date you pay the entire New Principal Balance, or (iii) the Maturity Date.

*(page 3 of 15 pages)*
(C3_14304-4) Bank of America, N.A.

PKG 194/C3_14304-4

C. I understand that by agreeing to add the Capitalized Amounts to the outstanding principal balance of my modified Loan, the Capitalized Amounts shall accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid and deferred interest that is capitalized and added to the outstanding principal balance, which would not happen without this Agreement.

Unpaid late charges and insufficient fund fees incurred prior to the Modification Effective Date will be waived. Fees for optional loan product(s) you may have purchased with your Loan will not be waived.

D. The new principal balance of my Loan shall be the sum of the existing principal balance of my Loan and the Capitalized Amounts less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Loan will be $276,968.46 (the "New Principal Balance").

E. As of February 15, 2017 interest will begin to accrue at an initial interest rate of 2.000% on the New Principal Balance and the first new monthly payment on the New Principal Balance will be due on March 15, 2017. The initial interest rate will remain in effect until February 15, 2018, thereafter the interest rate will increase by 1.00% each subsequent year until it reaches the interest rate cap of 4.125%.

Lender will defer $75,000.00 of the New Principal Balance (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $201,968.46. Any amounts deferred under this Agreement are not forgiven, but payment of these amounts is only delayed.

I agree to pay in full the Deferred Principal Balance and any amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the existing or modified Maturity Date. If I make a partial prepayment of principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due and no prepayment penalty or fee will be charged.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THE AMOUNT OF

THE FINAL PAYMENT ON THIS LOAN, ASSUMING ALL SCHEDULED PAYMENTS ARE MADE IN ACCORDANCE WITH THIS MODIFICATION AGREEMENT, IS **$75,968.45** PLUS ANY ACCRUED AND UNPAID INTEREST.

My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 | 2.000% | 02/15/2017 | $746.51 | $0.00 | $746.51 | 03/15/2017 | 12 |
| 2 | 3.000% | 02/15/2018 | $848.29 | $0.00 | $848.29 | 03/15/2018 | 12 |
| 3 | 4.000% | 02/15/2019 | $954.15 | $0.00 | $954.15 | 03/15/2019 | 12 |
| 4-30 | 4.125% | 02/15/2020 | $967.47 | $0.00 | $967.47 | 03/15/2020 | 323 |
| 30 | 4.125% | 01/15/2047 | $75,968.45 | $0.00 | $75,968.45 | 02/15/2047 | 1 |

*Escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

If I have any optional products (which may include Credit Insurance), I understand that my monthly payments may be higher than the amounts shown above because they may include amounts for the premiums and/or fees for my optional products.

The above terms in this Section shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

F.    If my monthly payments are automatically being deducted from a deposit account under PayPlan, I understand that for my payments to draw at the new amount under this Agreement, I must cancel my existing PayPlan agreement (if I have not already done so) and enter into new PayPlan arrangements, by calling Servicer at 800.669.6650.   During the time my PayPlan arrangements are canceled, I understand I must make my monthly payments under this Agreement by sending a check for the amount of my payment to the following address:

Bank of America, N.A.
4500 Amon Carter Blvd
Fort Worth, TX 76155

I understand that I may also make my payment by phone, by calling 800.669.6650 (for which there may be a fee).

I agree that if I make any payments for amounts included in the New Unpaid Principal Balance under this Modification Agreement, Servicer may apply those payments to the first payment due under this Modification Agreement on the Modification Effective Date, for amounts received during the month before the Modification Effective Date; or Servicer may apply those payments to reduce the Unpaid Principal Balance of my Loan.

In addition, I agree that any remaining unapplied amounts may be applied to reduce the principal balance of my Loan. I understand that all payments due between the date Servicer sent this Modification Agreement to me and the Modification Effective Date are included in the New Unpaid Principal Balance.

G.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

4.  **Additional Representations and Agreements.** I represent and agree as follows:

A.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree; the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  The terms of this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of  the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  The Loan Documents, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; and nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.  I have a Home Equity Line of Credit ("HELOC") under my Loan Documents. If my ability to draw on the HELOC has not yet been terminated, I hereby consent to the termination of my ability to make future draws on my HELOC. This means that I will not be able to make further draws on my HELOC; that if an access card was issued in connection with my HELOC, that access card will be deactivated; and that if my HELOC provided overdraft protection as to one or more accounts, that overdraft protection will be terminated. If my HELOC is subject to one or more Fixed Rate Loan Options ("FRLOs"), all FRLOs will be terminated no later than the Modification Effective Date and, thereafter, any balance previously subject to a FRLO will accrue interest at the same rate as the New Principal Balance except to the extent that, by this Agreement, such balance is subject to a forbearance.

G.  As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  As of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  As of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the Loan retains its lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I further agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Program.

L.  Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.

M.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section, shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

SIGN
HERE   *Patricia Lee Kamens*
Patricia Lee Kamens

(Must Be Signed Exactly As Printed)

02/27/2017
MM/DD/YYYY

SIGN
HERE   *Roland A. Kamens*
Roland D Kamens

(Must Be Signed Exactly As Printed)

02/27/2017   02/27/2017   RDK
MM/DD/YYYY

**DO NOT WRITE BELOW THIS LINE.**
•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP By: Urban Settlement Services, LLC, its attorney in fact

By:

_____          _____
Name:                                Date
Title:

EXHIBIT E

ORDER   403771

DOCKET NO: AANCV196034972S

U.S. BANK NATIONAL ASSOCIATION,
NOT IN ITS INDIVID
        V.
KAMENS, PATRICIA LEE Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF ANSONIA/
MILFORD
    AT MILFORD

12/23/2019

ORDER

ORDER REGARDING:
11/04/2019 110.00 MOTION FOR JUDGMENT-STRICT FORECLOSURE

The foregoing, having been heard by the Court, is hereby:

ORDER:

Notice of Judgment of Foreclosure by Sale
Property Address: 717 Wheelers Farm Road, Orange, CT.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $286,150.24 as of 10/31/2019
Attorney Fees: $3,525.00
Total: $289,675.24
Appraisal Fee: $315.00
Title Search Fee: $225.00
Fair Market Value: $407,000.00
Land: $125,000.00
Improvements: $282,000.00
Ronald David Kamens, Patricia Lee Kamens, and Caralee M. Kamens found not to be in the U.S.
military.
The Sale Date is: Saturday, June 27, 2020
Terms of the Sale: 12:00 noon on the premises.
Deposit Amount: $40,700.00 Deposit to be paid by bank or certified check only.
Committee Appointed: WALTER ROBERT SAWICKI, SAWICKI, PC, 51 CHERRY STREET,
MILFORD, CT 06460
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: DIANA G NYTKO, CT PROPERTY APPRAISERS, 5 DARINA PLACE,
MILFORD, CT 06460
Return of Appraisal by: Friday, June 12, 2020
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Saturday, May 23, 2020
Sign to be posted on: Thursday, May 28, 2020
Publication in New Haven Register on: 6/14/2020, and 6/21/2020 including a picture of the subject
property if available at no additional cost.
Ad to be posted on Judicial Website.

Plaintiff's Atty: BENDETT & MCHUGH PC, 270 FARMINGTON AVENUE, SUITE 151,
FARMINGTON, CT 06032

Copies sent Thursday, December 26, 2019 to:
BENDETT & MCHUGH PC

AANCV196034972S   12/23/2019                                      Page 1 of 2

Short Calendar Results Automated Mailing (SCRAM) Notice was sent on the underlying motion.

403771

Judge: JOHN W MORAN
Processed by: John Urban

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

EXHIBIT E



## State of Connecticut Judicial Branch
# Superior Court Case Look-up



Superior Court Case Look-up
  Civil/Family
  Housing
  Small Claims

Attorney/Firm Juris Number Look-up

Case Look-up
  By Party Name
  By Docket Number
  By Attorney/Firm Juris Number
  By Property Address

Short Calendar Look-up
  By Court Location
  By Attorney/Firm Juris Number
  Motion to Seal or Close
  Calendar Notices

Court Events Look-up
  By Date
  By Docket Number
  By Attorney/Firm Juris Number

Legal Notices

Pending Foreclosure Sales

Understanding
Display of Case Information

Contact Us



Comments

**AAN-CV19-6034972-S**
Prefix/Suffix: [none]

**U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVID v. KAMENS, PATRICIA LEE Et Al**

Case Type: P00    File Date: 08/22/2019    Return Date: 09/10/2019

Case Detail | Notices | History | Scheduled Court Dates | E-Services Login | Screen Section Help ▶
Pending Foreclosure Sales          To receive an email when there is activity on this case, click here.

### Information Updated as of: 07/27/2022

| Case Information | |
|---|---|
| Case Type: | P00 - Property - Foreclosure |
| Court Location: | MILFORD JD |
| Property Address: | 717 WHEELERS FARM ROAD, ORANGE, CT 06477 |
| List Type: | No List Type |
| Trial List Claim: | |
| Last Action Date: | 06/17/2022 (The "last action date" is the date the information was entered in the system) |

| Disposition Information | |
|---|---|
| Disposition Date: | 04/26/2021 |
| Disposition: | ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION |
| Judge or Magistrate: | HON THEODORE TYMA |

### Party & Appearance Information

| Party | No Fee Party | Category |
|---|---|---|
| **P-01  U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE RMAC TRUST, SERIES 2016-CTT C/O RUSHMORE LOAN MANAGEMENT SERVICES LLC** | | Plaintiff |
| Attorney: BENDETT & MCHUGH PC (102892)    File Date: 08/22/2019<br>270 FARMINGTON AVENUE<br>SUITE 151<br>FARMINGTON, CT 06032 | | |
| **D-01  PATRICIA LEE KAMENS**<br>Non-Appearing | | Defendant |
| **D-02  ROLAND DAVID KAMENS**<br>Non-Appearing | | Defendant |
| **D-03  CARALEE M. KAMENS**<br>Non-Appearing | | Defendant |
| **D-04  CITIBANK, N.A.**<br>Non-Appearing | | Defendant |
| **O-01  WALTER SAWICKI** | | Committee |
| Attorney: WALTER ROBERT SAWICKI (405617) File Date: 01/16/2020<br>SAWICKI, PC<br>51 CHERRY STREET<br>MILFORD, CT 06460 | | |

**Viewing Documents on Civil, Housing and Small Claims Cases:**

If there is an ℮ in front of the docket number at the top of this page, then the file is electronic (paperless).

- Documents, court orders and judicial notices in electronic (paperless) civil, housing and small claims cases with a return date on or after January 1, 2014 are available publicly over the internet.* For more information on what you can view in all cases, view the Electronic Access to Court Documents Quick Card.

- For civil cases filed prior to 2014, court orders and judicial notices that are electronic are available publicly over the internet. Orders can be viewed by selecting the link to the order from the list below. Notices can be viewed by clicking the **Notices** tab above and selecting the link.*

- Documents, court orders and judicial notices in an electronic (paperless) file can be viewed at any judicial district courthouse during normal business hours.*

- Pleadings or other documents that are not electronic (paperless) can be viewed only during normal business hours at the Clerk's Office in the Judicial District where the case is located.*

- An Affidavit of Debt is not available publicly over the internet on small claims cases filed before October 16, 2017.*

*Any documents protected by law Or by court order that are Not open to the public cannot be viewed by the public online And can only be viewed in person at the clerk's office where the file is located by those authorized by law or court order to see them.

## Motions / Pleadings / Documents / Case Status

| Entry No | File Date | Filed By | Description | Arguable |
|---|---|---|---|---|
| | 08/22/2019 | P | **SUMMONS** 🖻 | |
| | 08/22/2019 | P | **COMPLAINT** 🖻 | |
| | 01/16/2020 | O | **APPEARANCE** 🖻<br>Appearance | |
| 100.30 | 08/22/2019 | P | **RETURN OF SERVICE** 🖻 | No |
| 101.00 | 08/22/2019 | P | **FORECLOSURE MEDIATION PLAINTIFF'S COMPLIANCE WITH SERVICE (NO DOCUMENT)** | No |
| 102.00 | 08/22/2019 | C | **FORECLOSURE MEDIATION – ELIGIBLE CASE (NO DOCUMENT)** | No |
| 103.00 | 08/22/2019 | C | **FORECLOSURE MEDIATION-COMPLIANCE WITH P.A.09-209 (NO DOCUMENT) SEE FORM# JD-CV-109** | No |
| 104.00 | 09/25/2019 | C | **FORECLOSURE MEDIATION TIME PERIOD EXPIRED** | No |
| 105.00 | 10/24/2019 | P | **REQUEST TO CONFORM CASE INITIATION DATA ENTRY TO SUMMONS (JD-CL-96)** 🖻<br>to correct D-02 to Roland David Kamens | No |
| 106.00 | 10/24/2019 | P | **AMENDED RETURN** 🖻 | No |
| 107.00 | 10/24/2019 | P | **MOTION FOR DEFAULT -FAILURE TO APPEAR PB 17-20** 🖻<br>*RESULT:* Order 11/5/2019 BY THE CLERK | No |
| 107.10 | 11/05/2019 | C | **ORDER** 🖻<br>*RESULT:* Order 11/5/2019 BY THE CLERK | No |
| 108.00 | 10/24/2019 | P | **SUPPLEMENTAL RETURN** 🖻 | No |
| 109.00 | 10/24/2019 | P | **AFFIDAVIT OF COMPLIANCE WITH EMAP** 🖻 | No |
| 110.00 | 11/04/2019 | P | **MOTION FOR JUDGMENT-STRICT FORECLOSURE** 🖻<br>*RESULT:* Order 12/23/2019 HON JOHN MORAN | Yes |
| 110.01 | 12/23/2019 | C | **ORDER** 🖻<br>Judgment of Foreclosure by Sale<br>*RESULT:* Order 12/23/2019 HON JOHN MORAN | No |
| 110.10 | 12/23/2019 | C | **JUDGMENT OF FORECLOSURE BY SALE** | No |
| 110.20 | 12/23/2019 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION**<br>*RESULT:* HON JOHN MORAN | No |

| | | | | |
|---|---|---|---|---|
| 111.00 | 11/20/2019 | P | **RETURN OF SERVICE** 🗐<br>Amended | No |
| 112.00 | 11/20/2019 | P | **MOTION FOR DEFAULT -FAILURE TO APPEAR PB 17-20** 🗐 | No |
| 112.10 | 11/27/2019 | C | **ORDER** 🗐<br>GR:D-04<br>*RESULT:* Granted 11/27/2019 BY THE CLERK | No |
| 113.00 | 12/13/2019 | P | **PRELIMINARY STATEMENT OF DEBT** 🗐 | No |
| 114.00 | 12/17/2019 | P | **MILITARY AFFIDAVIT** 🗐<br>Caralee M. Kamens | No |
| 115.00 | 12/17/2019 | P | **MILITARY AFFIDAVIT** 🗐<br>Ronald David Kamens | No |
| 116.00 | 12/17/2019 | P | **MILITARY AFFIDAVIT** 🗐<br>Patricia Lee Kamens | No |
| 117.00 | 12/17/2019 | P | **FORECLOSURE WORKSHEET JD-CV-77** 🗐 | No |
| 118.00 | 12/17/2019 | P | **AFFIDAVIT OF DEBT** 🗐 | No |
| 119.00 | 12/17/2019 | P | **AFFIDAVIT RE: ATTORNEY/COUNSEL FEES** 🗐 | No |
| 120.00 | 12/17/2019 | P | **OATH OF APPRAISERS** 🗐 | No |
| 121.00 | 12/17/2019 | P | **APPRAISAL** 🗐 | No |
| 122.00 | 01/02/2020 | P | **NOTICE OF JUDGMENT – CERTIFIED/SERVED** 🗐 | No |
| 123.00 | 02/06/2020 | P | **RETURN OF NOTICE RE JUDGMENT OR ORDER** 🗐 | No |
| 124.00 | 04/29/2020 | C | **REOPEN FINAL JUDGMENT AND PLACE CASE AT PLEADING STATUS (KEYPOINT 2)** | No |
| 125.00 | 04/29/2020 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION**<br>*RESULT:* HON JAMES ABRAMS | No |
| 126.00 | 04/29/2020 | C | **ORDER** 🗐<br>New Sale Date = 7/25/20<br>*RESULT:* Order 4/29/2020 HON JAMES ABRAMS | No |
| 127.00 | 05/06/2020 | P | **NOTICE TO ALL PARTIES** 🗐 | No |
| 128.00 | 06/12/2020 | C | **REOPEN FINAL JUDGMENT AND PLACE CASE AT PLEADING STATUS (KEYPOINT 2)** | No |
| 129.00 | 06/12/2020 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION**<br>*RESULT:* HON JAMES ABRAMS | No |
| 130.00 | 06/12/2020 | C | **ORDER** 🗐<br>New Sale Date = 8/22/20<br>*RESULT:* Order 6/12/2020 HON JAMES ABRAMS | No |
| 131.00 | 06/15/2020 | P | **NOTICE TO ALL PARTIES** 🗐 | No |
| 132.00 | 07/08/2020 | P | **MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE** 🗐<br>*RESULT:* Granted 7/8/2020 HON THEODORE TYMA | Yes |
| 132.01 | 07/08/2020 | C | **ORDER** 🗐<br>New Sale Date = 9/19/20<br>*RESULT:* Granted 7/8/2020 HON THEODORE TYMA<br>**Last Updated:** Additional Description - 07/08/2020 | No |
| 133.00 | 07/08/2020 | P | **CASEFLOW REQUEST (JD-CV-116)** 🗐<br>*RESULT:* Granted 7/8/2020 HON THEODORE TYMA | No |
| 133.01 | 07/08/2020 | C | **ORDER** 🗐<br>*RESULT:* Granted 7/8/2020 HON THEODORE TYMA | No |
| 134.00 | 07/08/2020 | C | **REOPEN FINAL JUDGMENT AND PLACE CASE AT PLEADING STATUS (KEYPOINT 2)** | No |
| 135.00 | 07/08/2020 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE** | No |

| | | | MATTER PENDING ENTRY OF FINAL DISPOSITION<br>*RESULT:* HON THEODORE TYMA | |
|---|---|---|---|---|
| 136.00 | 07/15/2020 | C | REOPEN FINAL JUDGMENT AND PLACE CASE AT PLEADING STATUS (KEYPOINT 2) | No |
| 137.00 | 07/15/2020 | C | ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION<br>*RESULT:* HON JAMES ABRAMS | No |
| 138.00 | 07/15/2020 | C | ORDER<br>New Sale Date = 10/3/20<br>*RESULT:* Order 7/15/2020 HON JAMES ABRAMS | No |
| 139.00 | 07/21/2020 | P | NOTICE TO ALL PARTIES | No |
| 140.00 | 09/23/2020 | O | OATH OF APPRAISERS | No |
| 141.00 | 09/23/2020 | O | APPRAISAL | No |
| 142.00 | 09/30/2020 | P | MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE<br>*RESULT:* Granted 10/2/2020 HON THEODORE TYMA | Yes |
| 142.01 | 10/02/2020 | C | ORDER<br>Judgment Foreclosure by Sale- Sale Date= 1/30/21.<br>*RESULT:* Granted 10/2/2020 HON THEODORE TYMA | No |
| 143.00 | 09/30/2020 | P | CASEFLOW REQUEST (JD-CV-116)<br>*RESULT:* Granted 10/2/2020 HON THEODORE TYMA | No |
| 143.01 | 10/02/2020 | C | ORDER<br>*RESULT:* Granted 10/2/2020 HON THEODORE TYMA | No |
| 144.00 | 10/02/2020 | C | REPLACE RECORD TO PLEADING STATUS (KEYPOINT 2) AND ERASE ALL HIGHER KEYPOINT DATES | No |
| 145.00 | 10/02/2020 | C | JUDGMENT OF FORECLOSURE BY SALE | No |
| 146.00 | 10/02/2020 | C | ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION<br>*RESULT:* HON THEODORE TYMA | No |
| 147.00 | 10/02/2020 | P | NOTICE TO ALL PARTIES | No |
| 148.00 | 10/16/2020 | O | MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES<br>*RESULT:* Granted 11/2/2020 HON ARTHUR HILLER | No |
| 148.01 | 11/02/2020 | C | ORDER<br>*RESULT:* Granted 11/2/2020 HON ARTHUR HILLER | No |
| 148.02 | 11/02/2020 | C | ORDER<br>*RESULT:* Granted 11/2/2020 HON ARTHUR HILLER | No |
| 149.00 | 10/16/2020 | O | COMMITTEE REPORT<br>Interim Report Through 10-15-20 | No |
| 150.00 | 10/16/2020 | O | AFFIDAVIT RE: ATTORNEY/COUNSEL FEES<br>Interim Committee Fees | No |
| 151.00 | 01/07/2021 | P | MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE<br>*RESULT:* Granted 1/26/2021 HON THEODORE TYMA | Yes |
| 151.01 | 01/26/2021 | C | ORDER<br>Judgment of Foreclosure by Sale. New date= 3/27/21<br>*RESULT:* Granted 1/26/2021 HON THEODORE TYMA | No |
| 152.00 | 01/26/2021 | P | CASEFLOW REQUEST (JD-CV-116)<br>*RESULT:* Granted 1/26/2021 HON THEODORE TYMA | No |
| 152.01 | 01/26/2021 | C | ORDER<br>*RESULT:* Granted 1/26/2021 HON THEODORE TYMA | No |
| 153.00 | 01/26/2021 | C | REPLACE RECORD TO PLEADING STATUS (KEYPOINT 2) AND ERASE ALL HIGHER KEYPOINT DATES | No |
| 154.00 | 01/26/2021 | C | JUDGMENT OF FORECLOSURE BY SALE | No |

| | | | | |
|---|---|---|---|---|
| 155.00 | 01/26/2021 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION** <br> *RESULT:* HON THEODORE TYMA | No |
| 156.00 | 01/27/2021 | P | <u>**NOTICE TO ALL PARTIES**</u> 🗐 | No |
| 157.00 | 03/02/2021 | P | <u>**MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**</u> 🗐 <br> *RESULT:* Granted 3/15/2021 HON THEODORE TYMA | Yes |
| 157.01 | 03/15/2021 | C | <u>**ORDER**</u> 🗐 <br> Judgment of Foreclosure by Sale. Sale= 5/22/21. <br> *RESULT:* Granted 3/15/2021 HON THEODORE TYMA <br> **Last Updated:** Additional Description - 03/16/2021 | No |
| 158.00 | 03/15/2021 | C | **REPLACE RECORD TO PLEADING STATUS (KEYPOINT 2) AND ERASE ALL HIGHER KEYPOINT DATES** | No |
| 159.00 | 03/15/2021 | C | **JUDGMENT OF FORECLOSURE BY SALE** | No |
| 160.00 | 03/15/2021 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION** <br> *RESULT:* HON THEODORE TYMA | No |
| 161.00 | 03/18/2021 | P | <u>**NOTICE TO ALL PARTIES**</u> 🗐 | No |
| 162.00 | 04/12/2021 | P | <u>**MOTION TO OPEN JUDGMENT AND EXTEND THE SALE DATE**</u> 🗐 <br> *RESULT:* Granted 4/26/2021 HON THEODORE TYMA | Yes |
| 162.01 | 04/26/2021 | C | <u>**ORDER**</u> 🗐 <br> Judgment of Foreclosure by Sale. <br> *RESULT:* Granted 4/26/2021 HON THEODORE TYMA | No |
| 163.00 | 04/26/2021 | C | **REPLACE RECORD TO PLEADING STATUS (KEYPOINT 2) AND ERASE ALL HIGHER KEYPOINT DATES** | No |
| 164.00 | 04/26/2021 | C | **JUDGMENT OF FORECLOSURE BY SALE** | No |
| 165.00 | 04/26/2021 | C | **ADMINISTRATIVE CLOSURE OF FORECLOSURE BY SALE MATTER PENDING ENTRY OF FINAL DISPOSITION** <br> *RESULT:* HON THEODORE TYMA | No |
| 166.00 | 04/30/2021 | P | <u>**NOTICE TO ALL PARTIES**</u> 🗐 | No |
| 167.00 | 06/23/2021 | O | <u>**MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES**</u> 🗐 <br> *RESULT:* Denied 9/1/2021 HON ARTHUR HILLER | No |
| 167.01 | 09/01/2021 | C | <u>**ORDER**</u> 🗐 <br> *RESULT:* Denied 9/1/2021 HON ARTHUR HILLER | No |
| 168.00 | 06/23/2021 | O | <u>**COMMITTEE REPORT**</u> 🗐 <br> Interim Report Through 6-22-2021 | No |
| 169.00 | 06/23/2021 | O | <u>**AFFIDAVIT RE: ATTORNEY/COUNSEL FEES**</u> 🗐 <br> Affidavit Interim Committee Fees and Expenses | No |
| 170.00 | 07/08/2021 | O | <u>**APPRAISAL**</u> 🗐 <br> Per Court Order to Committee | No |
| 171.00 | 07/08/2021 | O | <u>**OATH OF APPRAISERS**</u> 🗐 <br> Appraisal Dated 7-6-21 | No |
| 172.00 | 07/13/2021 | P | <u>**AFFIDAVIT THAT PARTY IS IN BANKRUPTCY**</u> 🗐 | No |
| 173.00 | 09/28/2021 | O | <u>**MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES**</u> 🗐 <br> Resubmitted Per Entry 167.00 J Hiller Sale Date 1-30-21 <br> *RESULT:* Order 11/12/2021 HON ARTHUR HILLER | No |
| 173.01 | 11/12/2021 | C | <u>**ORDER**</u> 🗐 <br> *RESULT:* Order 11/12/2021 HON ARTHUR HILLER | No |
| 174.00 | 09/28/2021 | O | <u>**COMMITTEE REPORT**</u> 🗐 <br> Resubmitted Per Entry 167.00 J Hiller Sale Date 1-30-21 | No |
| 175.00 | 09/28/2021 | O | <u>**AFFIDAVIT RE: ATTORNEY/COUNSEL FEES**</u> 🗐 <br> Resubmitted Per Entry 167.00 J Hiller Sale Date 1-30-21 | No |

| | | | | |
|---|---|---|---|---|
| 176.00 | 09/28/2021 | O | **MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 3-27-21<br>*RESULT*: Order 11/12/2021 HON ARTHUR HILLER | No |
| 176.01 | 11/12/2021 | C | **ORDER** 🗐<br>*RESULT*: Order 11/12/2021 HON ARTHUR HILLER | No |
| 177.00 | 09/28/2021 | O | **COMMITTEE REPORT** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 3-27-21 | No |
| 178.00 | 09/28/2021 | O | **AFFIDAVIT RE: ATTORNEY/COUNSEL FEES** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 3-27-21 | No |
| 179.00 | 09/28/2021 | O | **MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 5-22-21<br>*RESULT*: Order 11/12/2021 HON ARTHUR HILLER | No |
| 179.01 | 11/12/2021 | C | **ORDER** 🗐<br>*RESULT*: Order 11/12/2021 HON ARTHUR HILLER | No |
| 180.00 | 09/28/2021 | O | **COMMITTEE REPORT** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 5-22-21 | No |
| 181.00 | 09/28/2021 | O | **AFFIDAVIT RE: ATTORNEY/COUNSEL FEES** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 5-22-21 | No |
| 182.00 | 09/28/2021 | O | **MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 7-24-21<br>*RESULT*: Order 11/12/2021 HON ARTHUR HILLER | No |
| 182.01 | 11/12/2021 | C | **ORDER** 🗐<br>*RESULT*: Order 11/12/2021 HON ARTHUR HILLER | No |
| 183.00 | 09/28/2021 | O | **COMMITTEE REPORT** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 7-24-21 | No |
| 184.00 | 09/28/2021 | O | **AFFIDAVIT RE: ATTORNEY/COUNSEL FEES** 🗐<br>Resubmitted Per Entry 167.00 J Hiller Sale Date 7-24-21 | No |
| 185.00 | 01/04/2022 | P | **AFFIDAVIT THAT PARTY IS IN BANKRUPTCY** 🗐<br>Automatic Stay in Effect | No |
| 186.00 | 06/17/2022 | P | **AFFIDAVIT THAT PARTY IS IN BANKRUPTCY** 🗐<br>Automatic Stay In Effect | No |

| Scheduled Court Dates as of 07/26/2022 | | | | |
|---|---|---|---|---|
| AAN-CV19-6034972-S - U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVID v. KAMENS, PATRICIA LEE Et Al | | | | |
| **#** | **Date** | **Time** | **Event Description** | **Status** |
| No Events Scheduled | | | | |

Judicial ADR events may be heard in a court that is different from the court where the case is filed. To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar and Family Support Magistrate Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

All matters on a family support magistrate calendar are presumed ready to go forward.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil🗐 standing orders. Markings made electronically can be viewed by those who have electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on Short Calendars and Family Support Magistrate

Calendars by going to the Civil/Family Case Look-Up⊡ page and Short Calendars By Juris Number⊡ or By Court Location⊡.

Periodic changes to terminology that do not affect the status of the case may be made.

This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information can be seen on this website for a period of time, from one year to a maximum period of ten years, after the disposition date. If the Connecticut Practice Book Sections 7-10 and 7-11 give a shorter period of time, the case information will be displayed for the shorter period. Under the Federal Violence Against Women Act of 2005, cases for relief from physical abuse, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Attorneys | Case Look-up | Courts | Directories | EducationalResources | E-Services | FAQ's | Juror Information | News & Updates | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2022, State of Connecticut Judicial Branch

Page Created on 7/27/2022 at 1:55:57 PM